NEW YORK CENTRAL RAILROAD CO. *v.* SARICH.

[No. 19,212. Filed February 26, 1962. Rehearing denied April 11, 1962. Transfer denied June 22, 1962.]

518

*Marvin A. Jersild,* of Chicago, Illinois, *Owen W. Crumpacker, Theodore M. Gemberling, Lowell E. Enslen, George V. Burbach,* and *Crumpacker, Gemberling & Enslen,* all of Hammond, for appellant.

*William I. Marlatt,* of Gary, for appellee.

. PFAFF, J.—This action was brought by appellee for the wrongful death of his eighteen year old unemanci-

pated daughter who was killed when the automobile in which she was riding as a guest passenger crashed into a viaduct owned by the appellant located on Chase Street in the city of Gary. The accident occurred on February 11, 1954, at approximately 1:30 a.m.

The appellee alleged in his complaint that appellant was negligent in six particulars. The appellant in his answer denied appellee's allegations and further alleged that the cause of decedent's death was the intoxicated and wantonly reckless driving of Lois Hoppe.

The court submitted the cause to the jury on only one allegation of negligence, that being whether the appellant had failed to comply with the statutes (§§36-1615, 36-1616, Burns' 1949 Replacement) regarding the painting of objects within the roadway of a highway.

The jury returned a verdict for the appellee in the sum of $10,000.00, and judgment was rendered thereon. The appellant filed a motion for a new trial containing some thirty specifications. The overruling of this motion is assigned as error.

The evidence in this case reflected that on February 11, 1954, at approximately 5:00 p.m. the decedent met Lois Hoppe, a thirty year old unmarried woman at a drug store in Gary, Indiana. They later picked up Sandra Davies, an unmarried twenty year old girl and the three of them drove around for about one hour in Miss Hoppe's automobile. They then went to the Caribou Tavern where they stayed for approximately three hours. The evidence is disputed as to the number of drinks consumed. Miss Hoppe testified that she drank four bottles of beer between 7:00 and 10:00 p.m. while Donald Adams, a State Police laboratory technician, testified that an analysis of Miss Hoppe's

blood revealed a 0.23% alcoholic content. He further testified that in his opinion to arrive at that figure a woman of Lois Hoppe's physical dimensions who had a 0.23% blood alcohol content three and one-half to four hours after she had stopped drinking would have consumed at least ten bottles of beer or ten ounces of 100 proof whiskey.

The evidence further reflected that the three women left the Caribou Tavern around 10:00 p.m. They drove around Gary and some small connecting communities in Miss Hoppe's automobile, driven by Miss Hoppe, until approximately 1:30 a.m. purportedly looking for a place to eat. At about 1:30 a.m., on February 11, 1954, they collided with a viaduct owned by the defendant. The evidence showed that the automobile was traveling in a northerly direction on the right hand side of Chase Street. It was dark and there were no warning signs to the south of the viaduct to warn approaching motorists of the presence of the viaduct. The viaduct was of a dark brown color, with a board painted in black and white slash marks and two red reflector buttons fastened to the face of the supporting posts.

Miss Hoppe testified that she had never traveled over Chase Street prior to the night of the accident and did not know of the presence of the viaduct. She further testified that she did not see the viaduct until leveling off after coming downhill from the grade crossing about fifteen feet from the viaduct, at which time she applied her brakes but was unable to avoid colliding with one of the posts of the viaduct in her path.

Appellant's railroad ran east and west and passed over Chase Street on a wooden viaduct. Chase Street was paved with a black asphalt material to a width of ap-

proximately 48 feet from curb to curb and, except under the viaduct, was of sufficient width to accommodate four lanes of moving traffic, two northbound and two southbound. The viaduct was supported by four sets of wooden posts, standing in the traveled portion of Chase Street, and were approximately one foot in diameter and creosoted. One set of posts was approximately six feet to the east of the center line of the street; another set was about six feet to the west of the center line of the street; another set was about six feet from the east curb; and a fourth set was about five feet from the west curb. Chase Street, as a result of these posts, could accommodate only three lanes of traffic under said viaduct. There was one lane in the middle of the street and one lane on each side of the center lane. There was a railroad grade crossing approximately 328 feet south of the viaduct, and the grade level of the crossing was approximately nine feet higher than the general level of Chase Street. This viaduct was installed in 1924 under plans and specifications adopted and agreed to by the city of Gary, Lake County, and the appellant railroad in a street opening proceeding initiated by the city of Gary.

The appellee's daughter was killed instantly in the accident. Lois Hoppe subsequently pled guilty to a charge of reckless homicide in the Lake Criminal Court.

There is a statute in this state, §36-1615, Burns' 1949 Replacement, which provides as follows:

"When any bridge, guard-rail, post, abutment, head wall, upright support or any other permanent physical object which is now or may hereafter be installed on or within the roadway of any highway or street in this state, or which may be installed or located in such close proximity to the traveled part of such roadway that the traffic thereon might be endangered thereby or collide

therewith, is painted or repainted, so much of the exposed surface of that part of such bridge, rail, post, abutment, head wall, support, or other object projecting above the surface of such public highway or street as may be necessary to reveal clearly the presence of such object to the traveling public shall be painted of no other color than white for its outside surface; Provided, That, if so desired, the surface of such objects may be so painted that black and white stripes shall alternate."

The court over appellant's objections gave to the jury appellee's tendered instruction No. 1 which instructed the jury that, at all times complained of in the appellee's complaint, the above statute was in full force and effect. The above statute was set out in the instruction and followed by the words: "You are instructed that if the defendant violated this statute, such violation would be *prima facie* evidence of negligence."

The appellant's first objection to the giving of the above instruction is that the statute was not enacted until 1925, one year after the viaduct in question was completed, and appellant argues therefore that the statute does not create an affirmative duty to paint, but merely states the manner in which the viaduct should be painted.

This point was before the Supreme Court in the case of *City of Indianapolis* v. *Evans* (1940), 216 Ind. 555, 24 N. E. 2d 776. In that case, an instruction, very similar to the one complained of in this case, was given and there was an objection to the instruction. The court in that case at p. 566 stated:

"Appellant construes the above statute as not requiring it to paint the obstruction at all, but if and when it does paint it, it must then paint it white, or to so paint it that white and black

stripes shall alternate. At any rate, the plaintiff must prove that the post had been erected long enough to give appellant a reasonable time to comply with the statute. Appellee contends that under circumstances as are presented here, the statute requires that the posts when erected must be painted as provided by the statute.

"One of the cardinal principles of statutory. construction is, that where the language used in the body of the act is ambiguous, or the meaning is doubtful, the court may look to the title of the act to ascertain the legislative intent. *City of Rushville* v. *Rushville Nat. Gas Co.* (1892), 132 Ind. 575; *Board etc.* v. *Albright* (1907), 168 Ind. 564; *State ex rel.* v. *Day* (1920), 189 Ind. 243.

"The purpose and scope of the act must be determined from the title. *Rexing* v. *Princeton Window Glass Co.* (1912), 51 Ind. App. 124. Courts will look to the general purpose of the statute and the evil to be remedied. *Board etc.* v. *Given* (1907), 169 Ind. 468; *Thorn* v. *Silver* (1910), 174 Ind. 504; *Kelso* v. *Cook* (1916), 184 Ind. 173. The evil to be remedied and the purpose of the act is clear. From the title of the act it is evident that the legislature intended that when an obstruction, such as is here in question is erected, it should be painted white, or with black and white stripes alternating, in the absence of any showing why it could not have reasonably been so painted."

We must conclude therefore that appellant's objection to the above instruction, on the basis that the statute does not create an affirmative duty to paint, is not well founded and that the instruction given is not subject to that objection.

Sec. 36-1616, Burns' 1949 Replacement, provides as follows: "Whoever shall violate any of the provisions of this act shall be deemed guilty of .a misdemeanor and upon conviction thereof shall be fined in any sum not less than twenty-five dollars ($25.00)."

Thus, the statute in question, by its terms, declares that a violation of it is a misdemeanor. The appellant contends that because the violation of the statute is a misdemeanor, it does not apply to a corporation and thus is not applicable to the appellant. The Supreme Court, in the case of *Golden Guernsey Farms* v. *State* (1945), 223 Ind. 606, 609, 63 N. E. 2d 699, stated:

> "Appellant contends that a corporation may not be prosecuted for either offense. The idea that a corporation is not indictable is said to have originated with Lord Holt. See 13 Am. Jur. *Corporations*, §1132. But this concept has long since been abandoned. A corporation may be convicted of crimes involving a criminal intent."

Also our Supreme Court held that the statute involved in this case was applicable to the City of Indianapolis in the case of *City of Indianapolis* v. *Evans, supra*. We are of the opinion, therefore, that there is no merit to appellant's contention that the statute, because of its penalty provision, cannot apply to a corporation.

Appellant then grouped for argument, pursuant to Rule 2-17e, his specifications of error Nos. 4, 5 and 6. Specification of error No. 4 is the irregularity in the proceeding of the court in that the trial court abused its discretion in overruling appellant's motion to withdraw submission, discharge the jury and grant a new trial to appellant. Specification of error No. 5 is the accident or surprise which ordinary prudence could not have guarded against in that the appellant did not learn, until the jury had retired to deliberate and before it reached its verdict, that the appellee had given to Lois Hoppe a covenant not to sue in the sum of $1600.00 as a result of the death of the appellee's minor child for whose death this action was brought.

The appellant's motion to withdraw submission, discharge the jury and grant a new trial was based on one sole reason, to-wit:

"Plaintiff's counsel has for the first time informed the defendant that plaintiff received $1,600.00 from Lois Hoppe's insurance company for a covenant not to sue. Said plaintiff has never informed the defendant or its counsel of receiving said sum prior to this trial."

The motion does not contain any allegation that appellant exercised due diligence, nor does it allege the facts from which the court could infer that appellant exercised due diligence to learn of this fact, which is used as the reason for the motion to withdraw the submission and discharge the jury. In order to make the specification of accident and surprise a proper ground for a new trial, it must be shown that proper diligence was used to avoid such accident and surprise. *Oglebay* v. *Tippecanoe Loan, etc., Co.* (1908), 41 Ind. App. 481, 486, 82 N. E. 494, and cases there cited. Upon examination of the record, there is no showing that due diligence was used by appellant to learn of this fact, and we must therefore conclude that the trial court properly overruled appellant's motion to withdraw submission and motion for a new trial.

Specification of error No. 6, argued by appellant, is based on newly discovered evidence material for the party applying, which it could not, with reasonable diligence, have discovered and produced at the trial, in that the appellee had executed a covenant not to sue Lois Hoppe for a consideration of $1,600.00. On motion for a new trial the facts constituting due diligence must be set forth. A mere statement that reasonable diligence has been

used is not sufficient. *Matis* v. *Yelasich* (1956), 126 Ind. App. 287, 132 N. E. 2d 728. Motions for a new trial on the ground of newly discovered evidence are looked upon with distrust and disfavor and should be granted with great caution. *Sprague* v. *Sowash* (1952), 122 Ind. App. 519, 106 N. E. 2d 471; *Thompson* v. *Edmonson* (1953), 123 Ind. App. 320, 110 N. E. 2d 358; *Ward* v. *State* (1956), 235 Ind. 531, 135 N. E. 2d 509.

The granting of such a motion rests largely upon the discretion of the trial court. *Koeneman* v. *Aldridge* (1955), 125 Ind. App. 176, 122 N. E. 2d 345. The court in the case of *Bartley* v. *Chicago & E. I. Ry. Co.* (1942), 220 Ind. 354, 360, 41 N. E. 2d 805, stated:

> "It is well settled that applications for a new trial on the ground of newly discovered evidence are looked upon with disfavor. Not only must diligence preceding the trial be shown but the evidence must be of such a character as to raise a reasonable presumption that a different result will be reached if it is introduced in the new trial. Granting such a motion is within the sound discretion of the trial court whose ruling will not be disturbed except for abuse of discretion."

There is also a rule that newly discovered evidence which bears only on the question of damages is not a proper basis for a new trial. *Curtis* v. *Mann* (1938), 105 Ind. App. 601, 14 N. E. 2d 345.

Applying the rules to the facts in the case before us, we are of the opinion that the appellant failed to show that due diligence was used to learn of the facts upon which its motion is based. We are also of the opinion that the newly discovered evidence in this case relates to the question of damages and would not be a proper basis for a new trial because

of newly discovered evidence, even if a proper showing of due diligence had been made by the appellant.

Specification No. 8 of appellant's motion for a new trial asserts error in that the court refused to give appellant's tendered instruction No. 5 which reads as follows:

"Plaintiff's decedent, Catherine Sarich, under all of the evidence, was under a legal duty to exercise reasonable care to avoid injury to herself. As a passenger in the automobile which struck the viaduct, it was incumbent upon her to exercise reasonable care in keeping a lookout for objects within the limits of the traveled portion of the highway in front of the vehicle in which she was riding and to exercise reasonable care in warning the driver of the car, Lois Hoppe, of the existence of obstructions or obstacles on the highway if, in the exercise of reasonable care she either knew or should have known of their existence. If you should find from all of the evidence that Catherine Sarich failed to exercise reasonable care in this regard and that her failure contributed to her own injury and death, then your verdict must be for the defendant."

An instruction similar to that one above was considered in the case of *Lindley* v. *Sink* (1940), 218 Ind. 1, 30 N. E. 2d 456. In that case the court also refused to give the requested instruction and appellant insisted that the court erred in refusing to give the requested instruction. The court in answering appellant's contention on that point at p. 18 stated:

"It is our opinion that instruction number 15 tendered by the appellant would tend to confuse, rather than to further enlighten, the jury on the law applicable to the facts presented by this case. Here the decedent was only a passenger in the automobile being driven by her husband. While it is true that a passenger is always under the duty to use reasonable care to avoid injury to himself (*Union*

*Traction Co.* v. *Grant* (1922), 193 Ind. 109, 116, 135 N. E. 486), it is ordinarily a question of fact as to whether under the circumstances of the particular case he has used such reasonable care. The question only becomes a question of law when the facts are such that reasonable men could honestly draw but one conclusion therefrom."

The court further stated at p. 19:

"The language of said instruction Number 15 carries the implication that the decedent as a matter of law was required to maintain a lookout for other automobiles and if seen to warn the driver of the automobile in which she was riding of their approach. This is not a correct statement of the law. She was only required to see appellant's automobile, realize the danger and warn her husband thereof if a reasonably careful and prudent person under the same or similar circumstances would have seen the automobile, realized the danger and given warning thereof."

This instruction even if it would have properly stated the law was not applicable to the facts of the instant case. There was no evidence that the deceased could have seen the viaduct any sooner than the driver of the automobile; nor is there any evidence that the deceased would have had time to have warned the driver far enough in advance to prevent the collision with the viaduct. It must also be noted that appellant's instruction No. 24 was given which was, in effect, that Catherine Sarich as a passenger in the automobile was required to use reasonable care and caution for her own safety, and that she was required to exercise that degree of care and caution which a reasonably prudent girl 18 years of age, of like intelligence, experience and education would exercise under the same or similar circumstances.

For the reasons given above, we conclude that the trial court did not err in refusing to give appellant's tendered instruction No. 8.

Appellant further contends that it was error for the court to refuse to give its tendered instruction No. 26 which reads as follows:

> "Plaintiff's decedent, Catherine Ann Sarich, was under a legal duty to exercise reasonable care to avoid injury to herself. If you find under all of the evidence, that Catherine Ann Sarich either knew, or, in the exercise of reasonable care for her own safety should have known, that Lois Hoppe had had too much intoxicating beverages to drink so that she would not be able to drive her automobile in a reasonably careful manner, and if you find, under all of the evidence, that Catherine Ann Sarich regardless on her part of the knowledge that Lois Hoppe was not in a fit condition to drive an automobile, nevertheless consented to become a passenger in an automobile driven by Lois Hoppe, knowing that Lois Hoppe at that time and place could not drive the automobile in a reasonably prudent manner, then Catherine Ann Sarich was guilty of negligence which contributed to her death, and your verdict must be for the defendant, The New York Central Railroad Company."

An instruction very similar to the one above was considered by this court in the case of *Roby v. Ziffrin, etc., Perryman v. Roby* (1958), 128 Ind. App. 578, 587, 148 N. E. 2d 215, wherein Judge Crumpacker stated:

> "This instruction is clearly bad. It is mandatory and assumes that the driver of the automobile in which Roby was riding at the time of the accident was under the influence of intoxicating liquor. It obviously invades the province of the jury and was properly refused."

It should also be stated that the above instruction tendered by appellant completely omitted the element

of proximate cause. Appellant's instruction No. 25 was given by the court which reads as follows:

"The law recognizes that it may be negligence to ride in an automobile being driven by an incompetent driver. Intoxication through alcoholic beverages may render the driver incompetent. If you find from all of the evidence, that the driver, Lois Hoppe, was under the influence of intoxicating beverages at the time and place of the accident, and that Catherine Sarich either knew or in the exercise of reasonable care should have known that Lois Hoppe was intoxicated and, nevertheless, voluntarily became a passenger in the automobile and that such action was a proximate cause of the death of Catherine Sarich, then, and in that event, Catherine Sarich would be guilty of contributory negligence and the plaintiff cannot recover."

A reading of the above instruction reveals that it covers the same point raised in appellant's instruction No. 26 which was refused. It has been repeatedly held by this court that the instructions must be read as a whole and where instructions are merely repetitious it is not reversible error to refuse the same. *Ring* v. *Ring* (1961), 131 Ind. App. 623, 174 N. E. 2d 58, 62.

For the reasons set forth above, we conclude it was not error for the trial court to refuse appellant's tendered instruction No. 26.

The appellant further contends it was error for the trial court to give appellee's instruction No. 4 over specific objections of the appellant. Appellee's instruction No. 4 reads as follows:

"A guest passenger in an automobile is not charged with the negligence, if any, of the automobile driver. Therefore, if you find that Catherine Sarich, the deceased child, was a guest passenger in the automobile driven by Lois

Hoppe, then she cannot be charged with the negligence, if any, of Lois Hoppe."

It is a well settled rule of law in this state that the contributory negligence of the driver cannot be imputed to the occupant where such occupant is passive and exercises no control over the driver. *Union Traction Co.* v. *Haworth* (1918), 187 Ind. 451, 115 N. E. 753; *Chicago, etc., R. Co.* v. *Lake Co. Savings, etc., Co.* (1917), 186 Ind. 358, 114 N. E. 454; *Vance* v. *Wells* (1959), 129 Ind. App. 659, 159 N. E. 2d 586. In view of these authorities, it is our opinion that appellee's instruction No. 4 was a correct abstract statement of the law. Appellant's specific objections to this instruction were two-fold: First, that if the driver of an automobile is obviously not in a fit condition to operate a motor vehicle and such physical condition is, by the exercise of ordinary care, readily observable to the passenger, then such passenger, if she nevertheless becomes a guest of the driver, is charged with negligence of the driver; and secondly, that if the decedent, in the exercise of ordinary care for her own safety, must have known that the driver was not a fit person to drive the motor vehicle, she is charged with knowing the driver was not a fit person to drive an automobile and such negligence on the part of the decedent is contributory negligence.

The instructions however must be considered as a whole and read together with all other instructions to determine if the law is correctly stated. In the instant case appellant's instructions Nos. 2, 4 and 25, which were given by the court, were dealing with contributory negligence of the appellee's decedent, and appellant's instruction No. 25, as set out above, in particular provided that the decedent would be

guilty of contributory negligence if she either knew or should have known that the driver was intoxicated and nevertheless voluntarily became a passenger in the automobile. We are of the opinion, therefore, that appellant's objections to said instruction were not well founded and that the trial court did not err in giving appellee's instruction No. 4.

Appellant grouped his specifications Nos. 15, 17, 26 and 27 and argued them together. Specifications of error, Nos. 15 and 17, related to the court's refusal to give appellant's instructions Nos. 27 and 31, respectively. Instruction No. 27 stated in substance that the appellant was not under any legal duty to warn travelers on Chase Street of the existence of the supporting posts but that if any warning of such posts was necessary, the duty of providing such warning by signs or lights rested with the city of Gary. Appellant's tendered instruction No. 31 stated in substance that the pillars were lawfully placed in Chase Street and were lawfully maintained and, therefore, the appellant was not guilty of any negligence in maintaining the pillars in such manner and location.

Specifications of errors Nos. 26 and 27 related to the court's giving appellee's tendered instructions Nos. 8 and 9, respectively.

Appellee's instruction No. 8 reads as follows:

"You are instructed that it is immaterial whether the highway was laid out and opened before or after the construction of the railroad. The duty of the railroad to the public using the highway is the same in either case."

Appellee's instruction No. 9 reads as follows:

"You are instructed that at the time of the collision herein involved a statute of Indiana was in effect which provided that where a street or

highway is carried under a railroad, then the public authority or municipality having jurisdiction over such street or highway, shall maintain the street or highway and the drainage thereof, and the railroad shall maintain its roadbed and tracks and structures supporting the same."

The appellant in his argument stated that the duty to paint the viaduct in question was on the city of Gary and that the court should not have instructed the jury that the duty of maintaining the viaduct was on the railroad.

Sec. 36-1701, Burns' 1949 Replacement, provides in part as follows:

"Every steam or electric railroad company shall have the right to construct its railroad across any stream, water-course, road, highway, railroad or canal which the route of its road shall intersect, in such manner as not to interfere with the full use of the same and so as to afford security for life and property; . . . ."

Sec. 55-601, Burns' 1951 Replacement, which prescribes the general powers of a railroad corporation also provides that the railroad has the power to construct its road upon or across any highway so as not to interfere with the free use of the same and in such a manner as to afford security for life and property.

An additional statute, §55-1811, Burns' 1951 Replacement, provides in part as follows:

" . . . and where the street or highway is carried under any such railroad or railroads, then the public authority or municipality having jurisdiction over such street or highway, shall maintain the street or highway, and the drainage thereof, and the railroad or railroads shall maintain its or their roadbed and tracks and structures supporting the same."

In analyzing the pertinent parts of the above statutes, we conclude there was statutory authority for the railroad, in the instant case, to construct its overhead structure subject to certain conditions. However, there was also a statutory duty on the appellant to maintain the structures supporting its roadbed and tracks. The paint statute involved in the instant case, §36-1615, Burns' 1949 Replacement, provides that posts and other obstruction on the roadway of highways shall be painted white or black and white in alternate stripes. While it is true that this statute does not in express language state upon whom the duty to do this painting rests, it is our opinion that since there is a statutory duty on the appellant to maintain the structures, the duty to paint the structures in a certain manner as prescribed by the above statute rests upon the appellant. The appellant contends that the duty of maintenance as imposed by the statute is fully discharged when the railroad sees that the structures are of sufficient strength to hold up the tracks. However, appellant does not cite any authority from this state to support such a contention.

In view of the above conclusions, we are of the opinion that the trial court did not err in refusing to give appellant's instructions Nos. 27 and 31 and in giving appellee's instruction Nos. 8 and 9.

The appellant further contends it was error for the trial court to permit evidence of the number of other accidents without regard to whether surrounding conditions were the same. In this regard, appellant argues specification of error No. 16 contends the trial court improperly refused to give appellant's tendered instruction No. 30 which, in substance, would have told the jury that evidence of prior accidents would

be entirely immaterial. The appellant on this point also argues his specification of error No. 28, alleging it was error for the trial court to admit certain evidence as to other accidents occurring at the Chase Street viaduct.

The point of whether the appellant knew or should have known that the posts constituted a dangerous and hazardous traffic condition was at issue by virtue of the pleadings in the case. Appellee in his complaint under rhetorical paragraph 12 alleged:

> "That prior to February 11, 1954, many motor vehicles using said highway had collided with the posts supporting said viaduct during the hours of darkness and the defendant knew or should have known that the said posts constituted a dangerous and hazardous condition to motor vehicular traffic on said highway at night."

The appellant in its answer denied the allegations of this rhetorical paragraph.

Our Supreme Court in the case of *The Salem Stone and Lime Company* v. *Griffin* (1894), 139 Ind. 141, 38 N. E. 411, stated at p. 146:

> "Upon the trial a witness for the appellee was permitted, over the appellant's objection and exception, to testify that, prior to the time when appellee was injured, another was injured at the same point, and in being caught between the dormer and the carriage projections. The court admitted the evidence for the purpose of showing notice to the appellant of the dangerous condition of the premises. This was not error. *Louisville, etc., R. W. Co.* v. *Wright*, 115 Ind. 378; *City of Ft. Wayne* v. *Coombs*, 107 Ind. 75; *City of Delphi* v. *Lowery, Admx.*, 74 Ind. 520."

Applying the above rule to our instant case, we are of the opinion that the trial court did not err

in admitting evidence of other accidents at the ▮ the Chase Street viaduct since such evidence was admissible to show appellant's knowledge that the posts constituted a dangerous and hazardous traffic condition.

The appellant also argues that it was error for the court to refuse to permit appellant to introduce evidence to show the circumstances of these prior ▮ accidents since it did permit evidence that there had been prior accidents at the Chase Street viaduct. The record however reveals there was no offer to prove by the appellant, and thus the trial court's exclusion of evidence as to the circumstances of these other accidents presents no question for this court to review. *Camblin* v. *Metzger* (1932), 94 Ind. App. 273, 275, 180 N. E. 679.

The appellant further contends it was error for the trial court to refuse to give its tendered instruction No. 20 which reads as follows:

> "You are instructed that under the undisputed proof, the construction of the Chase Street viaduct was completed in 1924 and that the statute requiring viaducts to be painted was adopted in 1925. Therfore the statute was inapplicable to this case."

We do not feel that there is any merit to appellant's contention that the trial court erred in refusing to give the above instruction. Sec. 36-1615, Burns' 1949 Replacement, which is the statute requiring the bridge, guard-rail, post, abutment, head wall, upright support or any other permanent physical object to be painted in a certain manner, reads in part:

> " . . . or any permanent physical object which is now or may hereafter be installed . . ."

It is clear from this language that the legislature intended the act to apply to objects already installed when the act was passed. In addition our Supreme Court, in the case of *City of Indianapolis* v. *Evans, supra,* rejected the defendant's argument that it had no affirmative duty to paint an obstruction but, that if it did paint the obstruction, it must then paint it white or with white and black stripes. The court in that case further held that the evil to be remedied and the purpose of the act was clear and that the legislature intended that, when an obstruction is erected, it should be painted white, or with black and white stripes alternating, in the absence of any showing why it could not have reasonably been so painted.

Appellant's specification No. 3, in its motion for a new trial, is that the damages assessed by the jury are excessive. The action at bar is a wrongful death action brought by the appellee as a parent for the wrongful death of his daughter. This court, in the case of *Hahn et al.* v. *Moore* (1956), 127 Ind. App. 149, 155, 133 N. E. 2d 900, stated:

> "The right of a parent to the services of his minor child is a property right and the statute (§2-217, Burns' 1946 Replacement) gives the parent, in his own right, a cause of action for loss of such services or other pecuniary injury occasioned by personal injuries to or the death of his minor child, which action is not one for injury to the person but for injury to property within the meaning of Sec. 2-601, Burns' 1946 Replacement."

Thus, the action in the instant case was an action for an injury to property.

The specification to attack the amount of recovery in a suit for injury to property must be presented

under Clause Five of the causes for a new trial, which is stated in §2-2401, Burns' 1946 Replacement, and reads as follows: "Error in the assessment of the amount of recovery, whether too large or too small, where the action is upon a *contract or for the injury or detention of property.*" (Our emphasis). An allegation in a motion for a new trial that the damages assessed by the jury are excessive presents no question in an action for injury to property. *Chicago, etc., R. Co.* v. *Barger* (1924), 82 Ind. App. 266, 144 N. E. 646; *Brown* v. *Guyer* (1917), 64 Ind. App. 356, 115 N. E. 947.

In view of the authority set out above, we must conclude that appellant's specification No. 3 in his motion for a new trial presented no question to this court.

The appellant argues specification No. 13 of his motion for a new trial and contends it was error for the court to refuse to give appellant's tendered instruction No. 18 which, in substance, would have instructed the jury that appellee was not entitled to recover damages for loss of services because appellee had failed to offer evidence as to the reasonable value of the services performed by appellee's daughter. This court in the case of *Lake Erie, etc., R. Co.* v. *Chriss* (1914), 57 Ind. App. 145, 147, 105 N. E. 62, stated:

> "The rule so established is that where the facts as to the age, sex, education, health, disposition and general characteristics of the child are proven, and the situation and condition in life of the parents, or next of kin entitled to damages, if any, are shown there is evidence from which the jury, aided by knowledge and experience in the affairs of life, may assess substantial pecuniary damages under proper instructions from the court as to the law relating thereto. It is proper

for either party to offer any competent evidence as to the value of the services or cost of maintenance of the child, either to enhance or diminish the damages, but the absence of such specific proof, where there is evidence of the character above indicated, does not show a failure of evidence to support substantial damages, in reasonable amount, based upon the facts and circumstances of the particular case."

Applying this rule to our instant case, we find there was evidence as to decedent's age, sex, education, health, disposition and general characteristics and, therefore, we conclude it was not error for the court to refuse to give appellant's tendered instruction No. 18.

The appellant further contends that it was error for the trial court to give appellee's instruction No. 7 over objections of appellant. Appellee's instruction No. 7 reads as follows:

"If you find for the plaintiff, you should award him an amount sufficient to compensate him for the pecuniary loss occasioned by his daughter's death. The measure of damages is the value of the child's services from the date of her death until she attained the age of twenty-one (21) years, less the cost of her support, and in addition, the plaintiff, if entitled to recover, would also be entitled to recover the amount of the funeral and burial expenses. You may consider whether the decedent was living with her father and mother, whether the father and mother may have reasonably expected and would have probably received from their said daughter such personal attention and services as are usually rendered by a daughter so living with her father and mother under such circumstances as said decedent lived. You may consider all the facts and circumstances in evidence which will enable you intelligently to decide the pecuniary loss suffered by said father and mother."

The appellant contends this instruction is erroneous because it includes personal attention as an element of damages and services rendered by the daughter to the mother when the father is not entitled to recover for pecuniary loss suffered by the mother. Our Supreme Court, in the case of *The Louisville, New Albany and Chicago Railway Company* v. *Rush* (1891), 127 Ind. 545, 549, 26 N. E. 1010, stated:

> "Under these instructions all that the words 'pecuniary value of all acts of kindness and attention' could be understood to apply to, are such acts of kindness and attention as it would be expected a child would render to the members of the appellee's family which would be of some pecuniary value, the nursing of sick members of the family, and other favors and acts rendered, attending to the other children, all may be said to be acts of kindness and attention which are reasonably expected to be performed by a daughter while a member of the family, and they are of value to the father, for, if not performed by her, other help must necessarily be provided to perform them."

There was evidence in the instant case that the appellee's wife was sick and that the decedent did the housework and nursed and attended her sick mother. Thus, the personal services and attention which the child rendered to her sick mother were of pecuniary value to the appellee. We are of the opinion therefore that it was not error for the trial court to give appellee's tendered instruction No. 7.

In view of our conclusions as stated above, we find no reversible error herein.

Judgment affirmed.

Kelley, P. J., Bierly and Gonas, JJ., Concur.

This cause was argued June 2, 1960, and assigned to the author of this opinion upon assuming office January 1, 1961.

NOTE.—Reported in 180 N. E. 2d 388. Transfer denied, Jackson, acting C. J.; Jackson, J., dissents.