WANDA SUE (ROBERTS) SCHWING *v.*
JUDITH L. (LANG) McKIBBIN.

[No. 1269A249.  Filed December 15, 1970.  Rehearing denied
January 13, 1971. Transfer denied March 25, 1971.]

*Hubert E. Wickens, Don Hubert Wickens, W. Michael Wilke,* of Greensburg, for appellant.

*Donald W. Ward, Feeney & Ward, Virginia Dill McCarty,* of Indianapolis, *Phillips B. Johnson,* of Versailles, for appellee.

SHARP, J.—This is an appeal from an action for personal injuries brought by plaintiff-appellee, Judith L. McKibbin, against defendant-appellant, Wanda Sue Schwing, arising out of an automobile accident in which plaintiff-appellee was a non-paying guest. Trial was had by jury, which returned a verdict of $15,000. Appellant's Motion for a New Trial was overruled and this appeal resulted. Counsel for both parties have filed excellent briefs which have been most helpful.

The sole assignment of error is the overruling of the Motion for a New Trial, which contains the specifications that the verdict was contrary to law and that the trial court erred in refusing to give several of defendant-appellant's tendered instructions.

We are not to weigh the conflicting evidence, but rather, must examine the factual record with all inferences in favor of the judgment below. The essential facts are that the appellant and appellee had gone to a dance hall, the Riverview Tavern, together in appellant's car. At the dance were two of their mutual acquaintances, Connie McCool and Jack Knose. Both appellant and appellee had known Jack for about two years and he had dated appellant sporadically for approximately one year. Jack had known Connie for about six months and they had dated. On the night in question, Jack ignored appellant in favor of Connie, much to the chagrin of appellant. Neither appellant nor appellee had consumed any intoxicating beverages. All four young people left the dance between 1:30 and 2:00 A.M., with Connie McCool leaving first, followed by appellant with appellee as a guest passenger and Jack Knose behind them.

The three cars, in the above order, proceeded south on the Lawrenceburg Road in Ohio in order to reach U.S. 50, which they would take home. The Lawrenceburg Road is a two-lane county road, blacktop, 18 feet wide, marked with a dividing line. It is very winding, with quite a few curves, but both appellant and appellee had traveled the road frequently and were familiar with it.

All three cars were traveling at what Connie and appellee called a normal rate of speed for that road, which is somewhere in the area of 45 to 55 miles per hour, although the speed limit was 35 miles per hour. Jack passed the appellant's car and fell in behind Connie about one mile south of the Riverview Tavern. Appellant knew that Jack was following Connie home and she was mad because Jack had shown a marked preference for Connie that evening.

Subsequent to Jack passing appellant, both Jack and Connie were driving at a speed of about 50 to 55 miles per hour. After Jack passed her and while she and the appellee were discussing Jack's drawbacks, appellant suddenly accelerated and continued to accelerate (appellee testified that the speedometer read between 80 and 90 miles per hour) as she passed the two other cars despite the repeated warnings of appellee. Appellant had just gotten by the last car by the time she reached the curve and in the curve she apparently lost control and started to spin.

Appellee testified on direct examination as to the latter events and conversations as follows:

"Q. At that particular time and after Jack passed your car tell the jury what you and Wanda were talking about at that time.

"A. Wanda had dated Jack and we were talking in general about what kind of a crumby [sic] heel he was, he treated her badly, he wasn't a very nice boy.

"Q. Was that because he wasn't dating her, on that particular evening, just tell the conversation you had with her?

"A. She was mad, he was at Riverview, and didn't do anything and he was obviously following Connie home, and she knew he was, and she was mad and we were talking about it."

\*      \*      \*      \*

"Q. I would refer you to the point the officer testified it was three-tenths of a mile north of where the accident occurred, can you tell the jury what happened just as you approached the stone bridge and what happened from that time on?

"A. We went over the stone bridge and Jack's and Connie's car was in front, and we were going fast, I said, 'Wanda, slow down.' She went ahead after I said, Wanda, slow down. I can see the road and the car goes into a slide and I put my hand over my eyes and we hit, I guess she lost control.

"Q. Back up, when she stepped down on the gas, when did you tell her to slow up?

"A. We were going along I looked at the speedometer I though [sic] you are going too fast, I said, 'Slow down, my God, Wanda, what do you think we are doing.'

"Q. Did you say anything like 'don't pass'?

"A. I could have, after you get past a certain point there is no place to go except up, and we hit the curve, and I said, 'Wanda, slow down.'

"Q. Did you do anything or say anything as you started around Jack, that is when you begin [sic] telling her to slow down?

"A. Yes.

"Q. Did she slow down?

"A. No, she went on.

"Q. Same speed or a little faster?

"A. I don't know, she passed Jack and Connie, and I told her, I don't know how many times to slow down.

"Q. Did she slow down?

"A. No.

"Q. She kept on going?

"A. After I slid down in the seat and put my hands over my eyes I don't know.

"Q. Did she apply the brakes at any time

"A. I don't know.

"Q. Did you feel the car slow down?

"A. I didn't feel anything, it started around and around and hit.

"Q. Did your car spin around?

"A. Yes.

"Q. Now you did say to slow down from this point at the bridge to where you hit?

"A. Yes, I don't know how many times."

The issue presented by this appeal is whether all the facts and inferences drawn therefrom demonstrate a "perverse motive" or "mental attitude adverse to the welfare of the guest" so as to meet the mental requirement for wanton misconduct within the meaning of the Indiana Guest Statute (Burns' Statute Annotated § 47-1021).

The essential elements of wanton misconduct as set forth by our Supreme Court in *Clouse* v. *Peden* (1962), 243 Ind. 390, 391, 186 N. E. 2d 1, read as follows:

"To be guilty of wanton misconduct within the meaning of the statute, the driver must (1) be conscious of his misconduct; (2) be motivated by a desire to assert himself or his interests above or beyond, or in reckless indifference for, the safety of his guest, and (3) he must do so knowing that his conduct subjects them to a . . . probability of injury."

This court in *Brueckner* v. *Jones* (1970), 146 Ind. App. 314, 255 N. E. 2d 535, 543 in a review of Indiana guest cases, further enunciated guidelines to be used in evaluating such cases when it stated:

"a.  An error of judgment or a mistake standing alone, on the part of the host, will not amount to wanton or wilful misconduct.

b.  The host must have manifested an attitude adverse to the guest, or of 'perverseness', in that the host must have shown he was indifferent to the consequences of his conduct.

c.  The entire course of conduct of the host leading up to the accident must be considered.

d.  The host must have had actual knowledge of danger confronting the guest."

The perverse attitude required of the host was defined by this court in *Mazza* v. *Kelley* (1970), 147 Ind. App. 33, 258 N. E. 2d 171 as follows:

"Appellant asserts that, inherent to the rule as above stated, there must be some 'perverse motive' on the part of the driver, such as malice or wilfulness, as related to the probability of injury to his guests, and that no such motive existed on the part of this appellant. We concur in the fact that to constitute 'willful or wanton misconduct' there must be a 'perverse motive,' in that the misconduct must be conscious and intentional and of such a nature that under the known existing conditions injury will probably result therefrom.  However, as heretofore stated, this does not mean that the wrongful conduct of the driver must be motivated by malice, ill will, or intent

to injure. Our statute (§ 47-1021, supra), uses the words 'wanton or wilful' in the disjunctive. Therefore, it is sufficient to meet the condition of the statute if the misconduct is wanton."

The appellant asserts that, as in the *Mazza* case, the facts here presented fail to disclose the requisite mental element, "perverseness," and relies heavily on the *Brueckner* case, supra, where this court found, as a matter of law, that said element was not present.

Judge Sullivan, in differentiating between the factual situations that existed in *Mazza* and *Clouse* from those in *Brueckner,* stated:

"That decision, Brueckner v. Jones, (1970), 146 Ind. App. 314 [20 Ind. Dec. 315], 255 N. E. 2d 535, reversed a judgment by the trial court in favor of the guest plaintiff. That case, however, is clearly distinguishable from the factual situation here presented. The Brueckner decision distinguished Clouse v. Peden, supra, as follows at p. 543,

'The guest in Clouse had asked the driver to slow down and reminded the driver of a prior accident at the same intersection. The guest continued to plead with the driver to slow down. The driver approached the intersection without applying his brakes.'

and relied upon a factually similar case, Tuttle v. Reid (1966), 247 Ind. 375 [8 Ind. Dec. 250], 216 N. E. 2d 34. Judge Sharp noted that the guest statute test contemplates and requires establishment of a mental attitude on the part of the driver with respect to both his driving and his guest, which is adverse to the welfare of his guest. In the Brueckner case it was held that there was a total lack of evidence concerning the existence of such mental attitude.

We hold that there was sufficient evidence from which a jury might properly find such mental attitude to be here present. It is the evidence of warnings, repeatedly and by not one, but by all of defendant-appellee's passengers, which together with the sliding of the car would justify a jury's conclusion that the defendant was conscious of his misconduct. Such knowledge or consciousness may be obtained not only through the use of the driver's faculties but as well from information conveyed to him in the nature of warnings by others. Bedwell v. DeBolt (1943), 221 Ind. 600, 50

N. E. 2d 875. Swinney v. Roler (1943), 113 Ind. App. 367, 47 N. E. 2d 846. Both sources are here present."

While appellant initially seeks to have the instant case quartered neatly within the confines of *Brueckner,* supra, finally counsel is compelled to face the reality that on a strictly factual basis the case is more closely aligned with *Mazza,* supra. Therefore, if any distinction is to be drawn between this case and *Mazza,* it must necessarily be one of degree and not one of kind. This conclusion is buttressed by the oral argument of appellant's counsel, in which they noted the variances in the length of time of the misconduct, the number of warnings and the number of guests voicing said warnings to be found in *Mazza* vis-a-vis this case, all of which are distinctions of degree. We do not believe that such variances are fatal to the judgment below. The many plurals enunciated by Judge Sullivan in *Mazza* are not to be construed as essential to a finding of "perverseness," in that they must always be present; rather, said plurals are used to emphasize the magnitude of the misconduct and to show that such misconduct was clearly within the holding of *Clouse* v. *Peden,* supra, wherein the demands of a guest are sufficient to advise a driver of his misconduct.

We do not believe that from the facts presented here it can be said, as a matter of law, that there was no evidence of probative value from which a jury could properly find such mental element. Although the entire course of conduct took place in a relatively short period of time, there was ample evidence that the appellant was warned initially and that she ignored the same while she still had time to correct her misconduct. Reasonable men could well find, as the jury did in fact, that the disregarding of warnings by the host, coupled with the excessive rate of speed while passing two cars at night over a narrow road familiar to the host, presented both knowledge of the danger confronting the guest and a manifestation of a mental attitude adverse to the guest, in that the host had shown an indifference to the consequences

of her conduct. While the degree of wanton misconduct might not reach the magnitude of that found in *Mazza, supra,* it is clearly sufficient to meet the tests developed there.

This court has recently considered two other guest cases which buttress the decision reached here. They are *Butcher* v. *Hull* (1970), 147 Ind. App. 686, 263 N. E. 2d 654, and *Morgan* v. *Reneer* (1970), 148 Ind. App. 90, 264 N. E. 2d 71. In the former, this court found that the case was very similar to *Brueckner* in that the necessary mental element was missing. The host was unfamiliar with the vicinity and the guest at no time warned the host about the manner and the operation of the motor vehicle. In the *Morgan* case, this court found a similarity of facts with those in *Clouse,* as there was a warning which was disregarded by the host as he proceeded to drive his motor vehicle at a speed of 50 miles per hour and to the left of the center of the highway. The warning given in that case, which was not repeated, was to the effect that "wouldn't it be awful or terrible if a car was coming up the other side."

Judge Sullivan, in a dissenting opinion to *Morgan,* stated:

> "In addition, I cannot equate the speculative statement made by appellee . . . [quoted above] with the warning of peril noted or required in cases cited by the majority opinion."

Thus the majority opinion found that the single statement quoted above was sufficient to inform the driver of his misconduct. Insofar as these two cases further define the elements essential to a finding of wanton misconduct and elaborate on the *Mazza-Brueckner* dichotomy they are noteworthy.

Appellant also questions the trial court's refusal to give her tendered instructions numbers 6, 1, 2 and 9 and also complains of the court's giving plaintiff's tendered instruction number 3 over appellant's objection. As to the tendered instruction number 6, since the law contained therein was adequately covered by instructions given by the

trial court, there was no error. *Lloyd* v. *Weimert* (1966), 146 Ind. App. 666, 257 N. E. 2d 851 and *Tuttle* v. *Reid* (1970), 247 Ind. 375, 216 N. E. 2d 34.

As this court said in *Bucks* v. *Walters* (1957), 127 Ind. App. 358, 367, 368, 141 N. E. 2d 872 adopting the language contained in 5 C.J.S. 1172, § 1779:

> " 'To warrant a reversal for refusal of a declaration of law, it must appear that the principle covered by the declaration requested has either not been covered by other declarations or that it has been incorrectly declared and the Appellate Court will not ordinarily take notice of the refusal unless the record discloses that the court proceeded on a fundamentally erroneous theory.' "

The other tendered instructions, the refusal of which are assigned as error, are concerned with the defenses of incurred risk, contributory wilful or wanton misconduct and imputed contributory wanton misconduct under a joint enterprise theory. However, it is the duty of the trial court to instruct the jury on such theories only if there is evidence in the record to warrant such instructions. *Pierce* v. *Clemens,* (1942); 113 Ind. App. 65, 79, 46 N. E. 2d 836; *New York Central R.R. Co.* v. *Sarich* (1962), 133 Ind. App. 516, 180 N. E. 2d 388.

As to refusal of an instruction on the issue of contributory wanton misconduct, the Supreme Court of Indiana stated in *Ridgway* v. *Yenny* (1944), 223 Ind. 16, 25, 57 N. E. 2d 581, as follows:

> "Error is assigned upon the giving of a mandatory instruction which the appellant contends 'entirely omitted the element or issue of contributory acts of wanton or wilful misconduct on her own part.' But there is no evidence of any wanton or wilful misconduct on the part of Miss Yenny, and the jury would not have been justified in denying her recovery upon that ground. . . .
>
> The warnings and danger and supplications to desist from reckless driving methods were not wanton or wilful misconduct. They did not contribute to the injury, but rather a failure to heed these warnings brought about the injury.

Assuming that the question of contributory wanton and wilful misconduct on the part of the plaintiff was in issue under the pleadings as a defense, the burden of establishing it was upon the defendant. There was no evidence tending to establish such a defense, and a peremptory instruction upon the subject would have been proper."

The same conclusion was reached by this court in *Rickner* v. *Haller* (1954), 124 Ind. App. 369, 382, 116 N. E. 525, concerning the refusal of an instruction on assumption of risk when the court stated:

"Finally, appellant's Instruction 12, refused by the court, was as follows:
'Assumption of risk is a defense in a guest case. If you find from the evidence that the plaintiff voluntarily rode in defendant's car and assumed the risk of riding with the defendant then the plaintiff cannot recover and your verdict should be for the defendant.'
This instruction was properly refused because there was no evidence that appellee voluntarily exposed herself to any known or appreciated danger, due to the wanton or wilful misconduct of appellant, by reason of which she sustained injury. See 65 C.J.S., Negligence, supra, § 174, p. 849."

Finally, appellant assigns as error the refusal to give her instruction on imputed contributory wanton misconduct under a joint enterprise theory. The general rule for imputed contributory negligence is that it cannot be imputed to a passenger who is passive and exercises no control over the driver. *New York Central R.R. Co.* v. *Sarich, supra.* Since the appellee did not control or have the right to control the vehicle and since the appellee, instead of remaining passive, actually warned appellant, there is no evidence from which to impute even contributory negligence to appellee, let alone contributory wanton misconduct, and the trial court properly refused the instruction.

The burden was on the appellant to supply the evidence to warrant the giving of these instructions. Since she did not meet that burden, she is not entitled to instructions on these

principles. It is not error to refuse instructions which are not applicable to the facts and evidence in the case.

We hold that upon an examination of the evidence most favorable to the appellee, the jury's verdict was supported by sufficient evidence of probative value and, therefore, said verdict was not contrary to law. The judgment of the trial court should be and hereby is affirmed.

Hoffman, P.J., and Lybrook, J.,[1] concur; Pfaff and White, JJ., not participating.

NOTE.—Reported in 264 N. E. 2d 629.

---

1. Judge Lybrook participated in this case by special designation.