ANDREWS v. MCNAUGHTON (ALLESHOUSE).

[No. 20,516. Filed May 10, 1967. Rehearing denied June 7, 1967. Transfer denied October 8, 1967. Rehearing denied November 16, 1967.]

*Hunt, Suedhoff & Wilks,* of Fort Wayne, for appellant.

*Gilmore Haynie* and *Livingston, Dildine, Haynie & Yoder,* both of Fort Wayne, for appellee.

Cook, J.—This action was commenced in the Steuben Circuit Court by Appellee-plaintiff, Earl F. McNaughton, against Appellant, Robert H. Andrews, and Allen Alleshouse, to recover damages for personal injuries sustained while Appellee was riding as a non-paying guest in an automobile driven by Appellant.

The cause was venued to the DeKalb Circuit Court. On Appellant's request the trial court ordered a separate trial on the issues formed by Appellee's single paragraph of complaint, Appellant's three paragraphs of answer, and Appellee's reply thereto.

The cause was tried by jury and resulted in a verdict for Appellee and against Appellant, in the sum of $105,000.00. Judgment was entered on the verdict on March 3, 1965. Appellant's timely motion for a new trial was overruled and such action of the trial court is assigned as error in this Court.

The question before the trial court and the principal ques-

tion which we must decide is whether under allegations of Appellee's complaint Appellant's conduct in the operation of his automobile was "wilful or wanton" within the meaning of the Indiana Guest Statute, Burns' Ind. Stat., 1965 Replacement, § 47-1021.

On September 5, 1962, and for several years prior thereto, the parents of Appellant and Appellee owned cottages near Clear Lake in Steuben County, Indiana. Appellant and Appellee, both twenty years of age, had been friends for three to four years. They "double dated," sailed and swam together at Clear Lake. During the forenoon and early afternoon of September 5, 1962, Appellee visited at Appellant's cottage, sailed and played croquet with Appellant, and at mid-afternoon the parties decided to go to Appellee's home in Fremont and play pool. Appellee entered Appellant's 1961 model automobile, was seated on the right hand side of the front seat, and Appellant drove toward Ray Road, which was a hard surfaced county highway extending in a westward direction toward the town of Fremont, in Steuben County. Before leaving the Clear Lake area Appellee suggested to Appellant that he pick up his uncle's automobile which he had driven to Clear Lake that morning and exchange it for his automobile which he had left at Fremont. Appellant did not make any comment and "sort of shrugged it off"and continued driving toward Ray Road; thence westward toward Fremont.

Appellant had driven over Ray Road many times and was, therefore, familiar with its general topography and the intesecting roads between Clear Lake and Fremont. When Appellant approached County Road 600E which extended from Ray Road southward, forming a T intersection, he saw a farm tractor ahead traveling westward approaching County Road 600E. This tractor was driven by Allen Alleshouse, an original defendant in this cause.

There was evidence from which the jury could have found: that Appellant, when approaching and overtaking the Alles-

house tractor, was driving at a speed of "75 maybe 65" miles per hour; that it was 1,950 feet from Road 600E eastward to Road 630E; that Appellant had an unobstructed view ahead of approximately 3,900 feet when he crossed Road 630E; that after crossing Road 630E both Appellant and Appellee saw an oncoming automobile, which it later developed was driven by one Grayce Whitten. The Whitten motor vehicle was traveling at a speed of "about 25 miles per hour," (although its speed was unknown to Appellant) and was about 3,500 feet west of Road 600E. After observing the Whitten automobile Appellant's automobile was proceeding up grade and he "lost sight" of the Whitten automobile and he then observed a westbound, slow moving tractor, driven by Alleshouse, nearing Road 600E. Appellant "pulled out to pass" the Alleshouse tractor, but did not sound his horn.

Appellee exclaimed, "Don't pass" and Appellant answered "Hold on." Appellee moved to the floor of Appellant's automobile. Appellant shifted from fourth gear to third gear, accelerated the speed of his automobile, when he observed Alleshouse begin a left turn into Road 600E, without first signaling his intention so to do. Appellant applied his brakes, skidded 86 feet up grade, passed the Alleshouse tractor, without contact, at the intersection of Road 600E. Appellant's automobile then proceeded westward on the berm and ditch extending along the south side of Ray Road, accelerating to a speed of 65 miles per hour, a distance of 449 feet, at which point Appellant's automobile returned to the south one-half of the paved portion of Ray Road, skidded 128 feet, and collided with the eastbound Whitten automobile, fatally injuring Grayce Whitten. Appellee suffered a fracture of the twelfth thoracic vertebra, spinal cord contusion, resulting in paraplegia. Appellee is permanently injured.

Appellant states that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. He admits

that his conduct was negligent but insists that his several negligent acts do not total to "wanton or wilful misconduct."

The law in this area is reasonably well settled in Indiana. The difficulty arises in applying established precedents to changing factual situations.

Appellant urges us to employ the reasoning of *Tuttle* v. *Reid* (1966), 247 Ind. 375, 216 N. E. 2d 34, and reverse the judgment of the trial court. He observes that "a careful analysis of *Tuttle* v. *Reid, supra,* shows that it is exactly in point and singularly applicable to the case at bar." We do not agree.

In *Tuttle,* the female driver of an automobile failed to stop at a preferential street, collided with another automobile occupying the intersection, resulting in injuries to one of her passengers. In summarizing the essential facts and the controlling rule, our Supreme Court said:

> "The evidence is uncontradicted that appellee Reid was unaware of the stop sign until the warning was given by Mrs. Kern as they were passing a house on the southeast corner of the intersection. At the time, appellee Reid was traveling at a speed of approximately forty miles per hour, which was ten miles per hour over the speed limit which was thirty miles per hour. As a result, the evidence shows that it was impossible for her to stop at the stop sign, and she had a very short time to act when she became aware of the peril . . . In the present case there is a total lack of evidence as to any mental attitude on the part of the driver which was adverse to the welfare of the guest or which might be considered as a 'perverse motive' in that the misconduct was conscious and intentional, and that the driver under the known circumstances knew that injury would probably result therefrom."

We do not derogate from *Tuttle*. However, we are not considering evidence indicating ordinary negligence or momentary thoughtlessness.

There were three occasions when Appellant should have avoided the collision which we have described. First, when

he saw the farm tractor which he intended to pass and another motor vehicle approaching from the opposite direction. Next, when he was passing the tractor and had a clear view of the approaching motor vehicle in closer proximity. Finally, when he passed the tractor without incident and reached a position of safety on the ditch extending along the south side of Ray Road. But Appellant, with compulsive drive and a complete disregard for the safety of Appellee and other persons using the highway "put on power," drove 449 feet on the ditch, attained a speed of 65 miles per hour, and emerged therefrom at a time when he knew the approaching Whitten motor vehicle would be occupying that part of the highway. Appellant drove 1,200 feet from the place where he began to pass the tractor to the point of collision. Under proper instructions the jury was entitled to find that Appellant's conduct was wilful, or wanton, or both. *Clouse* v. *Peden* (1962), 243 Ind. 390, 186 N. E. 2d 1; *Barbee* v. *Frick* (1965), 139 Ind. App. 43, 205 N. E. 2d 180.

Appellant bases error on the reading to the jury of one instruction tendered by Appellee, and the refusal of the court to give certain instructions tendered by him.

We have examined these instructions and find no errors.

Appellant place special emphasis on the alleged error of the trial court in reading Appellee's Instruction No. 6, which is as follows:

"I instruct you that in order for the defendant Andrews to be liable in damages to the plaintiff McNaughton, it is only necessary that the defendant's misconduct be wanton. Thus, although the defendant's misconduct must be more than negligence or reckless, it need not be willful, in that it is malicious, intentional or deliberate."

Appellant, at the proper time, objected to the giving of the foregoing instruction for the reason "that it wholly eliminates

the element of proximate cause, the instruction being mandatory in form." This instruction does not purport to set out all elements essential to a recovery. It is definitive and not mandatory, and follows the general language of our Supreme Court in the case of *Sausaman* v. *Leininger* (1958), 237 Ind. 508, 146 N. E. 2d 414.

Appellant argues that the trial court erred in refusing to read his instructions numbered 3, 8, 45, and 47. These instructions deal with the negligence of Alleshouse in making a left turn without appropriate signal. The trial court gave twenty-four instructions tendered by Appellant, including his instruction number 5, which informed the jury that if "the conduct of this tractor driver was the sole proximate cause of the accident then Plaintiff would not be entitled to recover against Mr. Andrews." The trial court instructed the jury on every theory of defense advanced by Appellant. The issues and subject matter of the remaining instructions tendered by Appellant and refused by the court were fully covered by other instructions read to the jury.

Appellant testified on cross examination, over an objection, that "this is irrelevant and immaterial," that he was convicted of eleven traffic offenses during the period from April 26, 1960, to June 18, 1962, growing out of a variety of charges including failing to stop for a main throughfare, speeding and reckless driving; that after the present incident he was convicted twice for speeding and finally for reckless homicide on charges arising from this happening.

Appellant's objection to these questions was too general, and we do not know of any valid reasons for excluding such testimony. Appellant's testimony conflicted with other evidence on material matters. Under such circumstances a party may be required, on cross examination, to answer as to convictions under the criminal laws as affecting his credibility. *McMullen* v. *Cannon* (1958), 129 Ind. App. 11, 150 N. E. 2d 765; *Topper* v. *Dunn* (1961), 132 Ind. App. 306, 177 N. E. 2d 382.

At the time Appellant was interrogated about convictions the trial court admonished the jury that the sole purpose was for testing the credibility of the witness. Thereafter, the court read Appellee's Instruction No. 14, which informed the jury "that such testimony cannot be considered by you on the question of the liability of the defendant Andrews in this case. Such testimony can only be considered by you in determining the credibility of the defendant Andrews."

The jury was properly advised of the scope and limitations of this evidence.

Appellant comments in his brief that "It is only proper in passing to call attention to the fact that Appellee McNaughton is not a proper recipient of the benefits of the Poverty Program. He is steadily employed in the family bank, and there is nothing in the evidence to indicate that said employment will not continue."

Appellant does not contend that the verdict of the jury is excessive. We believe that even a banker's son is entitled to "equal protection of the law."

Finding no errors, the judgment of the trial court is affirmed.

Judgment affirmed.

Pfaff, P. J., Bierly and Smith, JJ., concur.

NOTE.—Reported in 226 N. E. 2d 167.